UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

VINTAGE FOOD SERVICES, INC.,           Case No. 22-48073-tjt
                                                     Chapter 11
                                                     Hon. Thomas J. Tucker
          Debtor.

_____

## **OBJECTION TO CONFIRMATION OF**
## **PLAN OF REORGANIZATION**

       The Huntington National Bank ("Bank") by its counsel, Plunkett Cooney, files this Objection to the Debtor's Plan of Reorganization (the "Plan") and in support states as follows:

       1.      The Bank, as of the filing of bankruptcy, was owed $3,624,895.23 as represented by its Proof of Claim filed on February 3, 2023, being registered as Claim 9. The Bank's debt is secured by an all-asset lien on all of the Debtor's assets. The Bank's claim is composed of five loan obligations: (1) a promissory note, executed by Debtor with ADJ Properties LLC ("ADJ"), in the amount owing of $1,742,089.44 as of the bankruptcy petition ("Note I"); (2) a promissory note executed by Debtor in the amount owing of $75,994.10 as of the bankruptcy petition ("Note II"); (3) a promissory note executed by Debtor in the amount owing of $175,507.27 as of the bankruptcy petition ("Note III"); (4) a

promissory note, executed by Debtor and ALJ Properties LLC ("ALJ"), in the amount owing of $1,615,310.07 as of the bankruptcy petition ("Note IV"); and (5) a Master Card Business Account ending in 8141 executed by Debtor in the amount owing of $15,544.33 as of the bankruptcy petition ("Note V"). The interest rate on Note I and Note IV is fixed at 5%, the interest rate on Note III is fixed at 6%, and the interest rate on Note III is Prime plus 1.75%.

2. The Bank objects to the Plan, as it proposes to pay the Bank's claim in full on the earlier of the twenty-fifth (25th) full month after the Confirmation Date or from the proceeds from the sale of the Debtor's assets and real estate owned by ADJ and ALJ, but the Plan fails to establish how this will be achievable. Bank had been working with the Debtor for months prior to the filing of the bankruptcy, allowing it time to seek a buyer or refinancing but Debtor has been unsuccessful-even after having been offered a forbearance period and employing a broker of its choice. Further, the financials and projections do not support Debtor's ability to obtain refinancing. Any claim that COVID-19 caused Debtor's current financial situation fails, as the Debtor had been suffering financially well before the COVID-19 pandemic.

3. Debtor's 3-year projections (Exhibit B) continue to show the business operating at a loss into March of 2026. With the projections showing the business operating at a loss for 20 of the 36 projected months, it does not

appear Debtor will be able to make the proposed monthly payment to Bank. Debtor also uses the event deposits received for future events to cover present expenses, which leaves inadequate funds for future events and calls into question the actual deposits that are on hand and used in calculating Debtor's projections.

4. Indeed, Debtor's November and December Operating reports show the business operating at a loss. The only reason for the cash flow is due to an Employee Retention Credit Debtor received in November of 2022 in the amount of $205,934.39. Once these funds are depleted, it is uncertain how the proposed plan payments will be made.

5. Moreover, Bank objects to the proposed monthly payment of $21,784.00, as it does not satisfy the required monthly payment due under the Notes to Bank. The regularly scheduled monthly payments on Notes I, II, III, and IV total $28,381.00 plus Debtor is obligated to make a monthly payment on the business credit card, which the Plan fails to account for.

6. Bank objects to the Plan to the extent Debtor is seeking a carve out above and beyond the $85,000.00, which includes any fees owing to the US Trustee, Sub V Trustee, and Debtor's attorney and/or financial consultant.

7. Bank further objects to the 30-day cure period set forth in Section 4.2 of the Plan, as it is unreasonably lengthy given Debtor's proposal for Bank's recourse in the event of a default under the Plan.

8. The Plan must include a provision that because the Bank is fully secured, Bank is entitled to all of its attorney fees and costs pursuant to 11 USC § 506(b).

9. The Plan must also be modified to provide that the Bank's liens are claims and encumbrances on all of the Debtor's assets that will continue to encumber all assets post-confirmation, notwithstanding 11 USC §1141. The Bank also objects to the Debtor receiving a Discharge upon confirmation. Rather, the Debtor may only receive a Discharge after the Plan is completed.

10. The Plan must also provide specifically that all of the underlying loan documents between the Bank and the Debtor must remain operative and enforceable post-confirmation, except as modified by the Plan. There must be a specific provision which acknowledges there is no release of any guarantors until all of the indebtedness owed to the Bank is paid in full.

WHEREFORE, for the reasons set forth above, The Huntington National Bank respectfully requests that this Court deny confirmation of the Debtor's Chapter 11 Plan and for all other relief as just and proper.

Dated: February 13, 2023

Respectfully submitted,

*/s/ Lisa A. Hall*
Lisa A. Hall (P70200)
Plunkett Cooney
Attorney for Huntington National Bank
333 Bridge Street NW, Ste. 530
Grand Rapids, MI 49504
(616) 752-4615
lhall@plunkettcooney.com

Open.01491.91218.30540819-1